**STATE of Iowa, Appellee,**

v.

**Gary MENKE, Appellant.**

**No. 57180.**

Supreme Court of Iowa.

March 19, 1975.

Fehseke & Fehseke by R. L. Fehseke, Jr., Fort Madison, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., and Sidney E. Drake and Joel J. Kamp, Asst. County Attys., for appellee.

RAWLINGS, Justice.

Charged with delivery of a controlled substance, defendant pled not guilty. After return of a guilty verdict defendant ineffectively moved for an accommodation-delivery reduced sentence. He appeals from judgment entered. We reverse.

August 29, 1973, Roger Timko, an Iowa Narcotics Enforcement officer, along with Larry Harryman, a paid informant, went to the West Point home of Vivian Palmer. Shortly thereafter this threesome drove to a farmhouse located about two miles south of West Point. The intended purpose of the trip was to effect a drug-purchase by Timko, through Harryman, from the farmhouse occupant.

Upon arrival, Timko engaged in a "drug-buy" conversation with defendant Menke. The latter was unable to produce drugs desired by the former. In this regard Timko testified the drugs were apparently under lock somewhere outside the farmhouse. Menke wanted Timko to wait for return of the party having the key. When Timko indicated he would not do so, Menke went upstairs and later returned, apparently unable to find the key. Timko then said: "Well, if no deal can transpire at this time, I guess we'll leave."

Several moments later Miss Palmer produced and handed 40 tabs of LSD to Timko for which he ultimately paid $1.00 per hit to someone not identified by the record. Timko, Harryman and Palmer subsequently left the farmhouse.

Other relevant evidence will be considered as it relates to issues here to be considered.

In support of a reversal defendant contends trial court erroneously (1) overruled his mistrial motion based on prosecutorial misconduct during voir dire of the jury panel; (2) overruled his hearsay objection to a question asked of Officer Timko regarding Miss Palmer's time-of-transaction statements; (3) limited his cross-examination of Miss Palmer as to pretransaction deliveries of a controlled substance; (4) overruled his motions to dismiss, direct a verdict and order a new trial; (5) found a nonaccommodation delivery; and (6) denied defendant a fair trial.

■ I. The first question to be resolved is whether defendant's mistrial motion, interposed in course of jury voir dire, should have been sustained.

Sometime after the panel had been advised to the effect defendant would attempt to establish an alibi defense, this colloquy occurred between the county attorney and a prospective juror: "Young people hang together, don't they?" Upon receiving an affirmative response to that question the prosecutor asked: "They alibi for each other?" At this point defense counsel unsuccessfully moved for a mistrial adjudication.

We cannot place the stamp of approval upon such tactics as disclosed above. It still remains, however, this is a matter resting largely in trial court's discretion with which we interfere only where abuse is clearly shown. See Anderson v. City of Council Bluffs, 195 N.W.2d 373, 377 (Iowa 1972); Elkin v. Johnson, 260 Iowa 46, 50, 148 N.W.2d 442 (1967).

No such showing is made.

II. Next to be considered is defendant's contention to the effect Timko was erroneously permitted to introduce certain testimony over defendant's hearsay objection.

In course of trial Officer Timko appeared as a State's witness. After he had testified as aforesaid regarding defendant's search for a missing key and Miss Palmer's production of LSD, this colloquy occurred:

"Q. Now, you say Miss Palmer produced this substance? A. Yes.

"Q. And what did she do with it? A. She in turn handed it to me for my observation.

"Q. And what did she say?

"MR. FEHSEKE: We'll object to any statements made by Miss Palmer to Mr. Timko for the reason they call for hearsay.

"THE COURT: Overruled. It is admissible so far as made in the presence of the defendant. Overruled.

"A. It was stated, in fact, that the drugs were not hers; that she was holding them, and that they were the actual possession of the defendant, Mr. Menke.

"Q. (By Mr. Drake) They belonged to the defendant? A. That is correct."

In State v. Smith, 195 N.W.2d 673, 675 (Iowa 1972) this court defined "hearsay" as a statement other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. See also State v. Lanphear, 220 N.W.2d 618, 621–622 (Iowa 1974); State v. Kelsey, 201 N.W.2d 921, 924 (Iowa 1972). See generally Dutton v. Evans, 400 U.S. 74, 86–89, 91 S.Ct. 210, 218–219, 27 L.Ed.2d 213 (1970); Rule 801, Federal Rules of Evidence, Act of January 2, 1975, Pub.L. No. 93–595, 93rd Congress, H.R. 5463 (16 Crim.L. 3009, 3013).

■ Unquestionably, Miss Palmer's out-of-court statement, testified to by Timko, was testimonially offered to prove defendant's ownership of the LSD delivered by Palmer to Timko. It was thus offered to prove the truth of the statement made and therefore stood as hearsay.

■ It must be prefatorily conceded, mere silence by defendant at or about the time the challenged statement was made would not, alone, render same admissible as

to him. See State v. Kelsey, 201 N.W.2d at 925–927.

III. The question now posed is whether the aforesaid hearsay was admissible as an adoptive admission.

"[T]he term adoptive admission is applied to evidence of other conduct of a party which manifests circumstantially the party's assent to the truth of a statement made by another person." McCormick, Evidence, § 269 at 649 (2d ed. 1972).

On the other hand, it must be shown a person clearly and unambiguously assented to the statements of another before an adoptive admission comes into being. See 2 Jones on Evidence, § 13:28 (Gard, 6th ed. 1972); 29 Am.Jur.2d, Evidence, § 661.

A fair reading of the record before us discloses that after Palmer handed the LSD to Timko, these two, and defendant, discussed and finally agreed upon a price to be paid for it. There was also some talk between Timko and Menke regarding a "future deal."

The foregoing cannot be said to constitute a clear and unambiguous assent by Menke to the truth of any inculpatory statement as to him which had been made by Palmer to Timko.

It therefore follows trial court erroneously admitted the challenged testimony in evidence over defendant's timely hearsay objection.

And, as this court recently said in State v. Branch, 222 N.W.2d 423, 427 (Iowa 1974); "Error in admitting hearsay evidence must be presumed to be prejudicial unless the contrary is affirmatively established."

IV. Defendant contends, absent the above noted inadmissible hearsay, there was a fatal inadequacy of evidence disclosing an actual or constructive delivery by him of a controlled substance.

This court has consistently held, where an accused moves for a directed verdict the evidence must be viewed in a light most favorable to the State and the case should be submitted to the jury if there is any evidence reasonably tending to support the charge. See, e. g., State v. Dewey, 220 N.W.2d 629, 631 (Iowa 1974).

It is equally well settled, when an accused challenges sufficiency of the evidence to sustain a guilty verdict the evidence is again viewed most favorably to the State, and the court accepts as established all reasonable inferences tending to support the jury action. Furthermore, only the supporting evidence need be considered, whether contradicted or not. See e. g., State v. Myers, 215 N.W.2d 262, 263 (Iowa 1974); State v. Bruno, 204 N.W.2d 879, 884 (Iowa 1973); State v. Johnson, 196 N.W.2d 563, 566 (Iowa 1972).

Looking now to the record it discloses this testimonial interchange between the county attorney and Miss Palmer, a state-called witness, during direct examination of the latter:

"Q. * * * Now, Vivian, you mentioned a transaction between one of the people in your party and somebody else in the farmhouse. What do you recall about that? A. That someone in my party bought some LSD.

"Q. Bought some LSD. Who did they buy it from? A. I'm not sure.

" * * *

"Q. All right. And, Vivian, did you know the person who made the sale? A. I imagine I would have.

" * * *

"Q. Do you know the person who sold the forty tabs to the _ _ _. A. I'm not sure.

" * * *

"Q. All right. Now, back within the last two weeks at this table here, do you remember that discussion? [Reference to juvenile proceedings against Miss Palmer several weeks before this trial] A. Yes.

"Q. Do you remember I asked you at that time who made the sale? A. Yes.

"Q. What did you tell me then?

" * * *

"A. I was wrong in telling you that.

"Q. Who did you tell me, then? A. I said Gary Menke did, then.

" * * *

"Q. (By Mr. Drake) But now you don't remember for sure who it was? A. Now, I'm not sure.

"Q. Could it have been Gary Menke? A. It could have been.

"Q. But you did tell me two weeks ago it was him, right? A. Yes.

" * * *

"Q. And when this transaction took place, who did you give the tabs to? A. Mr. Timko said I gave them to him.

" * * *

"Q. Was that your acid? A. No.

"Q. It belonged to somebody else? A. Yes.

"Q. Why did you have it?

" * * *

"A. I was going to display it to Harryman.

" * * *

"Q. And what was the purpose in displaying it to Mr. Harryman? A. He told me that he was interested in buying some, or he wanted to buy some.

"Q. So, would it be a fair statement, Vivian, that you were kind of acting as a sales person? A. Yes."

■ It is apparent trial court correctly observed Vivian Palmer was an "adverse witness". Surely she was hostile and unwilling to testify. Therefore, leading questions were permissible. See State v. Walker, 133 Iowa 489, 494–495, 110 N.W. 925 (1907); 3 Wigmore on Evidence, § 774 (Chadbourn rev. 1970); 4 Jones on Evidence, § 24:12 (Gard, 6th ed. 1972); The Code 1973, Section 624.1. See also Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 644–645 (Iowa 1969).

■ Furthermore, under existing circumstances, the county attorney was properly allowed to quicken Miss Palmer's memory by calling attention to her prior statement, not for purpose of impeachment, but in order to refresh her recollection. See Breeding v. Reed, 253 Iowa 129, 134, 110 N.W.2d 552 (1961); State v. Billberg, 229 Iowa 1208, 1217, 296 N.W. 396 (1941); 3A Wigmore on Evidence, § 905 (Chadbourn rev. 1970); 4 Jones on Evidence, §§ 24:12–24:14 (Gard, 6th ed. 1972).

■ On the other hand answers elicited by leading questions are entitled to very slight weight and must be scrutinized most carefully. See Denniston & Partridge Co. v. Romp, 244 Iowa 204, 209–210, 56 N.W.2d 601 (1953).

■ The resulting testimony was less than positive in identifying Menke as the person for whom Palmer effected the sale of LSD to Timko. This did not, however, totally negate Palmer's testimony but rather went only to its probative value. See State v. Smiley, 201 N.W.2d 730, 731 (Iowa 1972); Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d at 645; Herbert v. Sandia Savings & Loan Association, 82 N.M. 656, 486 P.2d 65, 67 (1971). Also, as noted in State v. Reeves, 209 N.W.2d 18, 21 (Iowa 1973), it is for the fact finder, ordinarily the jury, to resolve questions of fact and credibility of witnesses. See also 4 Jones on Evidence, §§ 29:9, 29:13 (Gard, 6th ed. 1972).

Mindful of the foregoing we must now determine whether Miss Palmer's equivocable testimony eliminated the prejudice inherent in Timko's aforesaid hearsay.

■ As aforesaid, this court was confronted with the erroneous admission of hearsay over proper objection in State v. Branch, *supra,* and there observed, 222 N.W.2d at 427, such error is presumed to be prejudicial *unless the contrary is affirmatively established.*

Here the State's case depended on showing Palmer acted for Menke in effecting the

sale of LSD to Timko. And absent evidence of Palmer's two out-of-court statements the State made no such showing.

The first statement was purportedly uttered during or immediately after the sale by Palmer to Timko. In substance Palmer was quoted by Timko as having then said the deal was effected on Menke's behalf. As aforesaid, this evidence was inadmissible hearsay attended by a presumption of prejudice.

In an attempt to overcome that prejudice the State perforce relies on evidence of a second out-of-court statement purportedly made by Palmer. In this regard she, in response to in-course-of trial leading questions, initially admitted having made a statement while conversing with the prosecutor two weeks before Menke's trial to the effect she had made the sale for him. But this admission was followed by "in-the-same-breath" testimony that in making the statement two weeks earlier she was wrong.

If only the evidence of said second out-of-court statement had been presented the jury would have been required to determine whether it believed such testimony in the face of Palmer's immediate recantations. This, of course, presented a question of credibility for the trier of the fact.

It still remains, however, Palmer's second out-of-court statement was unavoidably relied upon by the State to eliminate the prejudice attending the prior impermissible hearsay testimony by Timko.

So the question posed is whether evidence elicited by leading questions put to Palmer regarding Menke's affiliation with the instantly involved transaction affirmatively eliminated the prejudice inherent in Timko's hearsay statement.

At the outset we find State v. Mattingly, 220 N.W.2d 865, (Iowa 1974) is so factually distinguishable as to be here inapplicable. In *Mattingly* each fact introduced by hearsay was substantially and unequivocably restated by the out-of-court declarant in-course-of trial. Here, however, Miss Palmer never testified she made the statement attributed to her by Timko nor did she affirmatively state under oath the involved sale was made by her on Menke's behalf.

 Bearing in mind answers given by a witness to leading questions have but slight weight, we are satisfied Palmer's in-course-of trial testimony was not sufficient to affirmatively dispel the aforesaid prejudice.

Furthermore, under existing circumstances, it is to us evident the prejudicial hearsay referred to above may have improperly tipped the scales in favor of the State on the principal issue in this case.

Briefly stated, we cannot find, beyond a reasonable doubt, trial court's erroneous admission in evidence of the aforesaid hearsay did not influence the jury in arriving at a verdict. Compare, State v. Kelsey, 201 N.W.2d 921, 927 (Iowa 1972).

It therefore follows defendant's motion for a new trial based upon the instant assignment should have been sustained.

We accordingly reverse and remand for a new trial.

V. In light of our holding *supra,* defendant's assignment to the effect trial court improperly restricted defense counsel's cross-examination of State's witness Palmer will be entertained since the issue may again arise on retrial.

The record reveals this discourse between defendant's attorney and Miss Palmer:

"Q. Do you know whether Mr. Menke ever, prior to August 29th, 1973, gave you any substance for sale on his behalf or for him?

"MR. JOHNSON [County Attorney]: Object to that question * * *.

"THE COURT: Sustained.

"Q. (By Mr. Fehseke) Did Mr. Menke ever, prior to August 29th, 1973, give you anything? A. No.

"Q. Did anyone ever, prior to August 29th, 1973, give you any controlled substance? A. No.

"MR. JOHNSON: Object to that question, Your Honor * * *.

"THE COURT: Sustained.

" * * *

"Q. Are you certain in your mind today, Miss Palmer, whether or not Mr. Menke ever did give you any substances prior to August 29th, 1973? A. Never did.

"MR. JOHNSON: I believe I objected to that question.

"THE COURT: Yes, and it's been sustained. That question will not be answered anymore. The jury will disregard the answer.

" * * *

"Q. Did Mr. Menke give you anything that evening?

" * * *

"A. No."

■ Reasonable latitude must be accorded a cross-examiner but the scope thereof as to any proper subject of inquiry rests generally in trial court's sound discretion. See Smith v. State of Illinois, 390 U.S. 129, 132–133, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968); 2 Underhill's Criminal Evidence, §§ 503, 505 (Herrick, 5th ed. 1956). See also Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

Defendant's attorney argues, since Menke's guilt was premised upon a constructive delivery by him of LSD to Timko, counsel should have been allowed to interrogate the witness further concerning her acquisition of the drugs from Menke.

Under existing circumstances we are not so persuaded.

The record clearly discloses that on cross-examination Miss Palmer was questioned as to whether she obtained from Menke the substance delivered to Timko and on at least one occasion the witness responded in the negative, absent any restrictive admonition by trial judge.

■ Furthermore, since defense counsel made no appropriate showing in trial court, by offer of proof or otherwise, we have no basis upon which to further evaluate defendant's present claim. In other words, this court is now called upon to impermissibly speculate as to some additional showing which defendant was precluded from making during the cross-examination of the witness Palmer.

Without placing the stamp of approval upon trial court's restrictions of defense counsel's cross-examination of Miss Palmer we find, under existing circumstances, defendant's instant complaint is without substance.

Reversed and remanded for new trial.

MASON, REYNOLDSON, HARRIS and McCORMICK, JJ., concur.

UHLENHOPP, J., MOORE, C. J., and LeGRAND and REES, JJ., dissent.

UHLENHOPP, Justice (dissenting).

I. I think that on two bases the trial court properly admitted Palmer's hearsay statement set out in division II of the majority opinion. First, the picture I get from the record is that Menke, Palmer, and Timko were jointly engaged in a conversation and transaction. We have here a classic illustration of an adoptive admission. McCormick, Evidence, § 269 at 649 et seq. (2d ed.). Second, the trial court could find from the other evidence that Palmer acted for Menke in the transaction, rendering Palmer's statements in the course of the transaction admissible against Menke as admissions by agent. McCormick, supra, § 267 at 639.

II. I also think a jury question existed on guilt, with or without the Palmer statement in the record.

I would affirm.

MOORE, C. J., and LeGRAND and REES, JJ., join this dissent.